**IN THE SUPREME COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| CATHERINE D. WAPLES, | § | |
| | § | No.  201, 2017 |
| Defendant Below, | § | |
| Appellant, | § | Court Below:   Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID. No. 1608002838 |
| THE STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:   May 9, 2018
Decided:   July 9, 2018

Before **STRINE**, Chief Justice; **VAUGHN** and **SEITZ**, Justices.

# O R D E R

On this 9th day of July 2018, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     Catherine D. Waples was convicted of two counts of Drug Dealing Plus Aggravator by a Superior Court jury.[1]   The convictions stemmed from two sales of crack cocaine she made to an undercover police officer.   She makes two claims on appeal.   First, she contends that the Superior Court erred by not ordering the State to disclose the identity of a confidential informant whose involvement in the case was not disclosed by the State despite Waples having requested such disclosure in

---

[1] In this case, the "Aggravator" was that the offenses occurred in a vehicle.   16 *Del. C.* § 4751A.

discovery requests. She also contends that the Superior Court erred by not granting her at least a *Flowers* hearing and/or a new trial because of the State's failure to disclose the use of the informant.[2] For the reasons which follow, we reject both contentions and affirm the judgment of the Superior Court.

(2) The State alleged that the first drug sale occurred on June 22, 2016. An undercover police officer called Waples by cell phone and arranged to buy $60 worth of crack cocaine. As agreed, the two met at the Dollar General in Laurel. The undercover officer exited his vehicle and walked to a blue minivan occupied by Waples. As he approached Waples' vehicle, an individual named George White stepped out of Waples' vehicle and walked away. Waples told the undercover officer to get in the back seat. There was a black male sitting in the front passenger seat and two children in the back seat. The officer and Waples then exchanged the cash and crack cocaine.

(3) The next day the undercover officer again contacted Waples to buy crack cocaine. This time he said he wanted to buy $20 worth. The two agreed to meet at the Hollybrook Apartment complex in Laurel. Within minutes the officer arrived at the apartment complex. Waples arrived a short time later. As had

---

[2] A *Flowers* hearing is an in camera proceeding in which a judge determines whether a confidential informant has any information which would materially aid the defense. It derives its name from the case of *State v. Flowers*, 316 A.2d 564 (Del. Super. Ct. 1973).

occurred the day before, when the officer approached Waples' vehicle, George White stepped out of Waples' vehicle and walked away. Waples and the officer then completed their transaction. This time there was no one else in Waples' vehicle.

(4) Waples was subsequently arrested and charged with two counts of Drug Dealing Plus Aggravator and two counts of Conspiracy in the Second Degree. George White was a co-defendant. During pre-trial proceedings, Waples' attorney served a detailed request for discovery upon the State under Superior Court Criminal Rule 16. The request asked the State to provide "[a] statement as to the involvement of any confidential informant(s), if applicable."[3] Subsequently, Waples obtained new counsel, and her new counsel also served a detailed request for discovery. The second request appears to be substantially identical to the one served by her first counsel. The second request also asked the State to provide "[a] statement as to the involvement of any confidential informant(s), if applicable."[4] In its responses to the requests for discovery, the State made no mention of a confidential informant. Police reports were produced, but they made no mention of any confidential informant.

(5) Trial commenced on February 27, 2017. On direct examination the

---

[3] App. to Appellant's Opening Br. at A-30.
[4] *Id.* at A-35.

undercover officer who was the buyer in the two drug transactions, Detective Sean Callaway of the Delaware State Police, described his purchases from Waples consistently with the accounts set forth above. On cross-examination, Detective Callaway was asked by defense counsel how he came to know Waples. He said he was introduced to her. When asked by who, the State made the following objection before the officer answered:

> Your Honor, two objections here. It is irrelevant at this point of how Detective Callaway became familiar with Ms. Waples. And should counsel have been interested in that, that is something that should have been brought up in a Flower's motion prior to trial.[5]

The prosecutor's objection overlooked the fact that defense counsel had no knowledge of possible involvement of a confidential informant until the State's objection was made at trial.

(6)     After a side bar, the trial judge overruled the objection. Detective Callaway then answered as follows:

> I was contacted by a past-proven reliable confidential informant who advised me that Catherine Waples and George White were selling crack cocaine in Laurel. I obtained a DELJIS photograph of Catherine Waples and George White. I presented it to a past-proven reliable confidential informant and that person said, yes, that is Catherine Waples and George White who are selling crack cocaine in the Town of Laurel, in and around the Town of Laurel. And then from there on we did control buys through the CI. Then the CI also introduced me to Cat and George.[6]

---

[5] *Id.* at A-7.
[6] *Id.* at A-9–A-10.

(7)     Defense counsel then asked Detective Callaway to identify the confidential informant.   That brought another objection from the State, and after a side bar discussion the trial judge ruled that the witness was not required to reveal the identity of the informant.

(8)     After the State rested, the trial judge granted a motion for judgment of acquittal as to the conspiracy counts.   Waples then proceeded with her defense. During opening statements, her counsel had discussed the defense of alibi.   He stated that on the 22nd and 23rd of June 2016, Waples was at Indian Rocks Beach, Florida on vacation with her boyfriend, his two sisters, and her three children.   That defense fell apart when the State revealed during trial that it had documentation that Waples appeared in an Alderman's Court here in Delaware on June 23.   Her second defense was presented through the testimony of George White.   He testified that he was introduced to Detective Callaway by a friend, Tony Farlow.   According to his testimony, he and Farlow conducted the two transactions for which Waples was on trial.   He further testified that a woman named Gloria Hoody was present when the transactions occurred, although she did not directly participate in the transactions. He testified that Waples was not present on either occasion.   Waples also testified and denied selling drugs to Detective Callaway.

(9)     After the jury convicted Waples of the two counts of Drug Dealing Plus

5

Aggravator, Waples filed a Motion for Judgment of Acquittal, or in the Alternative, *Flowers* Hearing and New Trial. In the motion, she argued that the State's failure to disclose the involvement of the confidential informant prior to trial was a clear discovery violation under Superior Court Criminal Rule 16; that the State's Rule 16 discovery violation precluded her from filing a pre-trial *Flowers* motion in an effort to discover the informant's role in the investigation; and that the informant would have divulged that Waples was coerced by Mr. White into committing one or both of the drug transactions and/or that the informant misidentified Gloria Hoody as Catherine Waples.

(10) The trial judge denied Waples' motion. He gave three reasons for doing so. The first was that the "confidential informant, number one, did not witness those deliveries; number two, did not participate in those deliveries; and, number three, was not a party to those deliveries. Thus, under *Flowers*, the defendant is not entitled to know the confidential informant's name."[7] The second reason given by the trial judge was that Detective Callaway "saw the defendant twice when she delivered cocaine to him. Detective Callaway testified to that at the defendant's trial and identified the defendant in court as the person who twice delivered cocaine to him. Thus, there is no reasonable argument regarding

---

[7] Ex. A. to Appellant's Opening Br.

misidentification."[8]  The third reason given was that Waples testified at trial and denied she had delivered drugs to Detective Callaway.  The trial judge reasoned, "[i]f George White tried to coerce the defendant into delivering the drugs to Detective Callaway, then the defendant surely knew that and could have raised it as a defense at trial, but chose not to do so."[9]

(11)  We review a trial judge's evidentiary rulings for an abuse of discretion.[10]  If we determine the trial judge abused their discretion then we must decide whether that error rises to the level of prejudice so significant that it denied Waples a fair trial.[11]  Similarly, we review a trial judge's ruling on a Motion for a New Trial for an abuse of discretion.[12]  We overturn discretionary rulings if they are based upon unreasonable or capricious grounds.[13]

(12)  Waples argues generally on appeal that the State's failure to disclose the involvement of the confidential informant deprived her of the right and ability to investigate the factual circumstances surrounding the State's use of the informant in order to determine if a *Flowers* motion was warranted, i.e., whether the informant would have been able to give testimony that would materially aid her defense.

---

[8] *Id.*
[9] *Id.*
[10] *Horsey v. State*, 2006 WL 196438, at *1 (Del. Jan. 24, 2006).
[11] *Id.*
[12] *Id.* at *3.
[13] *Id.*

7

(13)  Under the Delaware Uniform Rules of Evidence 509, the State has a privilege to refuse to disclose the identity of a confidential informant, unless it "appears in a criminal case that an informer may be able to give testimony which would materially aid the defense."[14]  Testimony that would materially aid the defense in this case would consist of testimony that Waples was not present at the scene of the two transactions, was misidentified as Gloria Hoody, or at least did not participate in the transactions.  The trial judge found, however, based upon the testimony of Detective Callaway, that the transactions were direct sales from Waples to Detective Callaway, that Detective Callaway clearly and unambiguously identified Waples as the seller, and that the confidential informant did not witness the transactions, did not participate in the transactions, and was not a party to the transactions.  These findings are supported by the record and eliminate any reasonable possibility that the informant had any testimony that would materially aid the defense.  We also agree with the trial judge that Waples' late coercion theory is defeated by her own testimony at trial.  Since there is no likelihood that the informant had testimony that would aid Waples, she has suffered no prejudice from the State's nondisclosure of the informant; and her appeal, therefore, fails.[15]

---

[14] D.R.E. 509(c)(2).
[15] This result is consistent with *State v. Flowers*, 316 A.2d 564 (Del. Super. Ct. 1973).  Under that case, no *Flowers* hearing is warranted if the informant is used only to establish probable cause.

8

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice